IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | : |
| | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | :   COMPLAINT |
| | : |
| RONALD K. BOWEN, | : |
| Defendant. | : |
| | : |

Plaintiff, the Securities and Exchange Commission (the "Commission" or "SEC")
alleges:

## **NATURE OF THE ACTION**

1.     The SEC brings this action against Ronald K. Bowen for securities fraud because
he stole over $233,000 from investors by offering to sell securities which he never owned and
could not provide.  He "sold" more than 100,000 shares of Class A restricted stock of Under
Armour, Inc. ("Under Armour"), a Baltimore based sports apparel company, to four investors in
late 2005 and early 2006.  Bowen falsely claimed that he had access to Under Armour stock
pursuant to an initial public offering ("IPO") by Under Armour in November 2005.  In fact,
Bowen never had access to Under Armour stock but took the investors' money, totaling more
than $233,000.  In November 2006, when the restriction on the stock was to be lifted and the
investors demanded their stock certificates, Bowen's scheme to defraud was unmasked.  He
confessed to them that he never had any Under Armour stock to sell.  In January 2007, Bowen
paid back $2,500 of the money that he stole from the four investors.

2.      By virtue of the conduct described in this Complaint, defendant Bowen directly or

indirectly, engaged in transactions, acts, practices, and courses of business which constitute

violations of Section 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)]

and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)]

and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

3.      The Commission brings this action, pursuant to Sections 20(b) and (d) of the

Securities Act [15 U.S.C. §§ 77t(b) and (d)] and Sections 21(d) and (e) of the Exchange Act [15

U.S.C. §§ 78u(d) and (e)] for an order permanently restraining and enjoining the defendant

Bowen, ordering disgorgement of unlawful profits, imposing civil penalties, and for other relief.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this action pursuant to Section 22 of the

Securities Act [15 U.S.C. § 77v] and Sections 21(e) and 27 of the Exchange Act [15 U.S.C. §§

78u(e) and 78aa].

5.      Bowen, directly or indirectly, made use of the means or instrumentalities of

interstate commerce, or of the mails in connection with the transactions, acts, practices and

courses of business alleged in this Complaint, certain of which occurred within the state of

Maryland.

6.      Venue lies in this Court pursuant to Section 22(a) of the Securities Act [15 U.S.C.

§ 77v(a)] and Section 27 of the Exchange Act [15 U.S.C. § 78aa].

**DEFENDANT**

7.      Bowen, age 42, is currently unemployed and his last known address was in Baltimore, Maryland.  Bowen was arrested on a bench warrant issued in a pending Georgia state court criminal matter in which he is a defendant and he is currently incarcerated in Atlanta.

**FACTS**

8.      In May 2005, Bowen and his then-girlfriend formed Reiley and Bowen, LLC ("Reiley & Bowen") for a purpose unrelated to this matter.

9.      In August 2005, Bowen's girlfriend relocated to Baltimore, Maryland after receiving a job offer in the sales department of Under Armour.

10.     In the fall of 2005, there was speculation in the media that Under Armour was planning to conduct an IPO.  During this time, Bowen devised his scheme to defraud investors. He contacted a number of friends and acquaintances and offered to sell them Under Armour shares in a private offering.

11.     Bowen claimed that, because of his girlfriend's employment at Under Armour, Reiley & Bowen had the opportunity to purchase 150,000 shares of Under Armour IPO stock at the price of $13 per share.

12.     Bowen created a phony Private Placement and Disclosure Document ("Disclosure Document") that stated that Reiley & Bowen would sell shares of Under Armour at the IPO price.  This phony Disclosure Document also included a description of Under Armour and its merchandise, risk factors involved in the private placement, and the procedures by which an investor could purchase the Under Armour shares from Reiley & Bowen.  The Disclosure Document included an "Acknowledgment of Receipt of the Private Placement Memorandum and

the Disclosure Document" which was required to be executed and returned to Bowen along with a check payable to Reiley & Bowen.

13.    Bowen also created a fake Stock Purchase Agreement, dated November 15, 2005, between Goldman Sachs and Reiley & Bowen.  In this Stock Purchase Agreement, Goldman Sachs purportedly sold 103,850 shares of restricted Class A Under Armour stock to Reiley & Bowen for $1,350,050.00.

14.    Armed with these fabricated documents, Bowen contacted friends in the Atlanta area to determine if he could entice them into investing in his scheme.  One of the friends he contacted did not personally invest his funds but passed on the information to his father, Investor A, Investor B, who was a family friend, and Investor C, an acquaintance in Atlanta.  All three of these investors received the fake Disclosure Document and Stock Purchase Agreement.  Investor C asked his accountant, Investor D, to review the documents and to advise him on whether to invest in this venture.

15.    In November 2005, Under Armour conducted its IPO.  Reiley & Bowen did not receive any stock as part of Under Armour's IPO.

A.    **First Round of Investments**

16.    On November 9, 2005, Investors A and B sent checks to Bowen, payable to Reiley & Bowen, in the amounts of $10,000.00 and $30,000.00 respectively.  On November 14, 2005, Investor C, sent a check to Bowen, payable to Reiley & Bowen, for $25,000.00 .  In addition, Investors A, B and C all executed the phony Disclosure Document receipt and sent it to Bowen.

4

17. In January 2006, Bowen sent receipts to all three investors for their invested funds. These receipts stated that Reiley & Bowen assigned a certain number of units of Under Armour stock to each investor.

**B.      Second Round of Investments**

18. In January 2006, Bowen asked Investors C and D if they would be interested in purchasing additional shares of Under Armour stock. Bowen told Investor D that there was another investor who had also bought IPO stock from Bowen but who wanted to sell his 3847 shares of the restricted stock for $50,000.00.

19. On or about January 26, 2006, Investors C and D each sent checks to Bowen, payable to Reiley & Bowen, in the amounts of $25,000.00. Investor D executed the Disclosure Document receipt and returned it to Bowen. In March 2006, Bowen sent receipts to Investors C and D for this round of their invested funds.

**C.      Third Round of Investments**

20. In March 2006, Bowen asked Investors C and D if they wanted to purchase an additional 9,100 shares of Under Armour stock. On or about March 24, 2006, Investors C and D sent checks to Bowen, payable to Reiley & Bowen, in the total amount of $118,300.00 to Bowen for the purchase of these additional 9,100 shares of Under Armour stock. Investor D divided his additional 4,600 shares amongst several of his personal and corporate accounts.

21. On April 19, 2006, Bowen sent receipts to Investors C and D for this final round of their investments. All total, Bowen received approximately $233,300.00 from his four investors.

5

**D.    Bowen Informs Investors That He Does Not Have Any Under Armour Stock**

22.    During the fall of 2006, Bowen's four investors began to inquire when they would receive their Under Armour stock. The value of the Under Armour stock had risen significantly since the IPO price of $13 per share and the four investors were anxious to receive their stock certificates and cash in on their investment.

23.    After stalling for several weeks, on November 27, 2006, Bowen confessed to his friend, Investor A's son and Investor D by email that he never had access to Under Armour IPO stock and that he had not purchased Under Armour shares with the funds that they had sent him.

24.    On December 1, 2006, Bowen met with Investors C and D in Atlanta where he signed promissory notes which obligated him to pay the four investors an aggregate total of more than $800,000.00. Investors C and D insisted that Bowen be obligated to pay all four investors the current value of Under Armour stock, not just their initial investments of $13 per share.

25.    In January 2007, Bowen sent a check for $2,500.00 to Investor D as partial payment on what he owed the four investors. During the next four months, Bowen infrequently contacted the investors with promises of paying the remainder of the funds pursuant to the promissory notes. However, Bowen has not returned any additional funds to the investors.

26.    On November 29, 2006, Bowen authored and signed a document which stated that he takes full responsibility, both civilly and criminally, for his actions. This document appears to have been notarized.

27.    On April 30, 2007, Bowen drafted an email that described his actions over the previous two years, including his fraudulent scheme described above.

6

28.     Bowen knew or was reckless in not knowing the facts and circumstances described above.

29.     By reason of the foregoing, defendant Bowen directly or indirectly, violated Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)] and Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5], and is likely to commit such violations in the future unless enjoined from doing so.

### PRAYER FOR RELIEF

THEREFORE, the Commission respectfully requests that the Court:

(a)     permanently enjoin Bowen from violating Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)] and Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5];

(b)     order Bowen to disgorge all profits realized from the unlawful conduct alleged herein, with prejudgment interest;

(c)     order Bowen to pay a civil money penalty under Section 20(d) of the Securities Act [15 U.S.C. § 77t] and Section 21(d) of the Exchange Act 15 U.S.C. [15 U.S.C. § 78u(d)] ;

*          *          *

(d)     grant such other relief as this Court may deem just and appropriate.

Respectfully submitted,

Gordon Brumback  (MD Bar No. 09013)
James A. Kidney
Scott W. Friestad
Laura B. Josephs
Linda Berrafati Moran
Philip J. Holmes

Attorneys for Plaintiff
Securities and Exchange Commission
100 F Street, N.E.
Washington, DC 20549
Telephone: (202) 551-4441 (Kidney)
Fax: (202) 772-9426
kidneyj@sec.gov
holmesp@sec.gov

DATED:  December 14, 2007

8